IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID ELBARDISSI, | |
| For himself and all Others similarly situated, | NO. |
| Plaintiffs | JURY TRIAL DEMANDED |
| v. | |
| SANTANDER BANK, NA AND JOHN DOES | |
| Defendants | |

**COLLECTIVE AND CLASS ACTION COMPLAINT**

NOW COME plaintiff, by and through counsel, and hereby allege as follows:

**PARTIES AND JURDISDICTION**

1. Plaintiff is, and at all relevant times was, a Branch Manager of Defendant Santander Bank, NA (the "Bank" or "Santander"). There are approximately 473 branches of the bank in the United States in the New England and mid-Atlantic regions.

2. Plaintiff David Elbardissi was, at all times relevant, the Branch Manager for the Montgomeryville, Pennsylvania branch of Santander. He is a citizen of Pennsylvania. As of the time of the filing, he had been employed by Santander for more than eight years.

3. The named plaintiff brings this action on behalf of himself and all other Branch Managers employed by Santander in 2022, who were eligible to receive bonus incentive payments under Santander's 2022 Branch Manager Incentive Plan ("the Plan").

1

4. Defendant Santander Bank, NA is a national banking association with its main office located in Wilmington, Delaware. Pursuant to 28 U.S.C. Section 1348, it is therefore considered a citizen of Delaware for purposes of diversity jurisdiction.

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. Section 1332(d)(2) as the matter in controversy exceeds the sum or value of $5,000,000.

6. This Court also has jurisdiction over any state law claims pursuant to 28 U.S.C. Section 1367.

7. Venue is proper in this District because, among other reasons, at least some of the proposed class members (including the named plaintiff) are employed within the District, and the Defendants' breaches as to those plaintiffs occurred within the District.

## CLASS ALLEGATIONS

8. Plaintiff bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

9. The class is defined as follows:

   All branch managers of Santander Bank, N.A. who were covered by the compensation plan effective January 1, 2022 through December 31, 2022 and whom Santander paid an amount on account of a modification to the plan, which Santander applied retroactively.

10. The class members are so numerous that joinder of all members is impractical. On information and belief, the class is comprised of between 450 and 500 individuals. The number and identity of the proposed class are readily ascertainable through inspection of the Banks's records.

11. Common questions of law and fact exist as to the claims of the members of the class, including: (a) the interpretation of the Plan; (b) whether Defendants violated the terms of

the Plan; and (c) whether the Plaintiffs are entitled to additional compensation under the Plan based on Defendants' breach thereof.

12. The claims of the named plaintiff are typical of the proposed class.

13. Questions of fact and law predominate over any individual members of the class. The Plan applied to all members of the class and governs the claims of the entire class.

14. The plaintiff has engaged counsel highly experienced in both employment law generally and wage claims in particular, as well as class action /multi-party litigation. Plaintiff's counsel will adequately, completely and vigorously represent the interests of the class.

15. As Branch Managers, the proposed class members each participated in the Plan, as it would be issued from time to time, typically on an annual basis.

16. As set forth more fully herein, Defendant Santander issued a Plan for calendar year 2022.

17. According to the terms of the Plan:

> This Plan is effective from January 1, 2022 through December 31, 2022. This Plan supersedes any previous incentive plans and communications, both written and verbal, to the extent that they address the subject(s) in this document. The Bank reserves the right to change or discontinue the Plan at any time *upon written notice to Participants,* unless written notice is not feasible, or otherwise in accordance with applicable law. *Notice of change or discontinuance shall not apply retroactively.*

18. In fact, as set forth herein, Santander has retroactively altered the terms of the Plan, in violation of both the Contractual terms of the Plan and applicable law.

19. The Plan was originally distributed to the Branch Managers through the Bank's intranet on or about December 31, 2021.

20. Each of the Branch Managers reasonably relied on the written terms of the Plan in performing their duties and in the expectation that they would be entitled to the benefits

thereunder unless and until the terms were prospectively modified in accordance with the terms of the Plan.

21. On or about February 2, 2022, the Plan was modified to account for the fact that the Bank was discontinuing its mortgage business. At the time the Bank noted that "while the removal of home lending would result in a negative net impact to Incentive Plan payouts, the proactive increase in annual discretionary targets more than compensates for this revision."

22. Over the course of the year, until November, the Company provided no further written notice to the Plan.

23. During the course of a Philadelphia regional meeting in June, Bank Management presented a PowerPoint slide in which management stated that there were additional changes to the Plan which would be effective July 1, 2022. Nevertheless, no formal changes were announced in writing.

24. In fact, even in that presentation, Managers were informed that "Earning potential and size of the bonus pool" were not changing; and that there would be "No change to the earning opportunities for top performers."

25. In fact both of these statements were false.

26. The Plan in general rated each of the Branch Managers according to a performance matrix, taking into account multiple factors to establish an overall performance rating. The score under that rating would result in a differentiated bonus potential under the Plan.

27. Specifically, the Branch Managers would be divided into one of five tranches (PL1-PL5), within three different peer groups, with each tranche setting forth a minimum range, funding level, and maximum range.

28. Thus, for example for those in the top 10%, the payments ranged from $0 to $100,000, with a funding level of $50,000.00. Those in the PL2 level would be funded at the rate of $32,500; and those in the PL3 tranches would be funded at $25,000.00, with decreasing levels of funding for each lower tranche. The funding level meant that each Regional or District Manager was given that amount of money per each Branch Manager who fell within each respective band; the District or Regional Manager would then be able to use his or her discretion to allocate the total aggregate funding for the District or Region within his or her discretion to the Branch Managers under their supervision.

29. In addition, the Plan provided for an additional $20,000.00 deferred compensation payout, payable over three years, for the top 10% of Branch Managers.

30. In or about early November, 2022, management sent a series of e-mails to all Branch Managers, informing them for the first time that the incentive target for each Branch Manager would be changed, retroactively. and would be limited to $20,000.00 per Branch Manager. The notices falsely claimed that the notice was being provided either "Because your bonus target changed in 2022 or you are a new hire this year." This resulted in a smaller aggregate pool of money being made available to the District or Regional Managers for distribution within the payment range, in direct contradiction to the representation in June that any changes would not affect the amount of money available in the aggregate bonus pool.

31. Upon receipt of the November e-mails, several of the bank managers questioned the apparent reduction in their target bonuses and the overall reduction in money allocated to the District and Regional Managers. Plaintiffs were given different responses. For example, the Senior Vice President and District Executive for South Jersey and Bucks County, Pennsylvania informed his Branch Managers that the e-mail was only being sent because the bonus was now being paid annually and that there were "[n]o changes in the incentive plan."

32. The $20,000.00 bonus target had a direct negative effect on the Branch Managers' Bonus Compensation.

33. One of the primary factors in determining the Managers' performance under the bonus performance matrix, as well as the performance and bonus potential for their subordinate bankers, is the total deposit balance attributed to the branch and/or banker.

34. On information and belief, Santander has a pattern of underreporting the total deposit balances, and later retroactively adjusting those figures, which had the potential to, and in some cases did, affect the bonus potential of both the Branch Managers and their subordinate bankers. This underreporting affected, at a minimum, the bonus potential for Branch Managers and bankers for the years 2019-2022.

35. In addition, Defendant Santander eliminated the top 10% deferred compensation payout altogether without advance notice.

36. The bonus Incentive payments were due on or before March 15, 2023.

## COUNT I
## ON BEHALF OF ALL CLASS MEMBERS
## (BREACH OF CONTRACT)
## v. SANTANDER BANK, N.A.

37. Plaintiff incorporates the previous allegations of the Complaint as though fully set forth herein.

38. Defendant Santander violated the terms of the Plan by retroactively altering its terms without written notice to the Plan participants.

39. Defendant Santander's conduct constitutes a breach of contract as a matter of law.

40. Defendant's breach has resulted in harm to each of the Plaintiffs, who received less in bonus compensation than they would have had the Plan not been improperly retroactively modified.

## COUNT II
## ON BEHALF OF ALL EMPLOYEES EMPLOYED IN PENNSYLVANIA
## PA WAGE PAYMENT & COLLECTION LAW
## v. ALL DEFENDANTS

41. Plaintiff incorporates the foregoing allegations of the Complaint as though fully set forth herein.

42. This Count is brought on behalf of Branch Managers working at branches within the state of Pennsylvania (the "Pennsylvania Plaintiffs").

43. The Pennsylvania Plaintiffs are, and at all times relevant were, "Employees" within the meaning of the Pennsylvania Wage Payment & Collection Law ("WPCL").

44. Defendant Santander was, at all times relevant, an "Employer" within the meaning of the WPCL.

45. The payments due and owing under the Plan are "Wages" within the meaning of the WPCL.

46. Defendant John Does were the relevant decision-makers and therefore "Policy-making individuals" within the meaning of the Pennsylvania Wage Payment & Collection Law, and therefore are "employers" within the meaning of the WPCL.

47. More than 60 days have passed since the bonus compensation was due and owing.

48. Defendants cannot demonstrate by clear and convincing evidence that they had a good faith basis for not paying the Plaintiff the bonuses as set forth in the Plan.

49. As a result, the Pennsylvania Plaintiffs are entitled to an additional twenty-five percent in liquidated damages in addition to the principal amounts due and owing to them.

50. Plaintiffs are also entitled to attorneys' fees and costs under the WPCL as a matter of law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, by and through his attorneys, demand entry of an Order entering judgment in their favor and providing the following relief:

1. Requiring Defendant Santander to file with this Court and furnish to counsel a list of all Class members and their last known e-mail and mailing addresses.

2. Authorizing Plaintiff's counsel to issue notice by appropriate means, of the nature of the action and the potential class members rights thereunder.

3. Certifying the general class under Fed. R. Civ. P. 23 with the Named Plaintiff as Class Representative.

4. Certifying the Pennsylvania subclass under Fed. R. Civ. P. 23 with Plaintiff Elbardissi as Class Representative.

5. Appointing Salmanson Goldshaw, PC to serve as class counsel for all classes.

6. Entering judgment in the class members' favor and against defendant.

7. Awarding all appropriate damages, including contractual damages on plaintiffs' contract claims, and:

As to class members employed in Connecticut, liquidated damages equal to the amount of the wages due and owing;

As to class members employed in Massachusetts, treble damages;

As to class members employed in New York, double damages;

As to class members employed in Pennsylvania, liquidated damages pursuant to the WPCL; and

As to class members employed in Rhode Island, treble damages;

or such extracontractual damages as are available under the respective state wage laws of any of the class members in regard to the respective states in which they were employed, together with an award of prejudgment interest, attorneys' fees, costs, and such other relief as the Court determines is appropriate.

/s_____
Michael J. Salmanson
SALMANSON GOLDSHAW, P.C.
Two Penn Center, Suite 1230
1500 John F. Kennedy Boulevard
Philadelphia, PA 19102
215-640-0593
215-640-0596 (fax)